UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HALL & ASSOCIATES | ) |
| 1620 I St., N.W. | ) |
| Suite 701 | ) |
| Washington, D.C. 20006, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. _____ |
| | ) |
| U.S. ENVIRONMENTAL PROTECTION AGENCY | ) |
| 1200 Pennsylvania Avenue, N.W. (2822T) | ) |
| Washington, D.C. 20460, | ) |
| | ) |
| Defendant. | ) |
| _____ _____) | |

**COMPLAINT**

**Preliminary Statement**

1.       Through this action, brought under the Freedom of Information Act ("FOIA"),

U.S.C. §§ 552, *et seq.,* as amended, Plaintiff, Hall & Associates ("H&A"), appeals the

Defendant's, the United States Environmental Protection Agency ("EPA" or "Agency"), (1)

improper process in responding to H&A's FOIA Requests; (2) improper withholding of

responsive records or segregable portions thereof; (3) improper use of the deliberative process

privilege, attorney client privilege, and/or attorney work-product privilege, 5 U.S.C. § 552(b)(5),

to withhold responsive documents, or portions thereof; and (4) excessive payment requests,

under FOIA.

2.       This action appeals the EPA's actions regarding FOIA Requests (1) EPA-

HQ-2018-010345 (Exhibit 1 – "Nov. 20, 2013 NJ Blending Clarification Request"); (2)

1

EPA-HQ-2018-010997 (Exhibit 2 – "2018 Blending Rulemaking Request"); (3) EPA-HQ-2018-008685 (Exhibit 3 – "Blending Enforcement Orders Request"); and (4) EPA-HQ-2018-008212 (Exhibit 4 – "4-States Meeting Blending Announcement Request").

3.     The Nov. 20, 2013 NJ Blending Clarification Request, 2018 Blending Rulemaking Request, Blending Enforcement Orders Request, 4-States Meeting Blending Announcement Request and FOIA Request EPA-HQ-2014-000552 (Exhibit 5 – "2013 *ILOC* Implementation Request") referenced therein were submitted on behalf of H&A's municipal clients.

4.     H&A's requests all pertain to the existence and implementation of the Agency's decision to nonacquiesce to the Eighth Circuit decision in *Iowa League of Cities v. EPA,* 711 F.3d 844 (8th Cir. 2013) ("*Iowa League of Cities*" or "*ILOC*") and uniformly classify blending as a prohibited bypass outside the Eighth Circuit.

5.     In *Hall and Associates v. EPA*, 315 F. Supp. 3d 519 (D.D.C. 2018), Judge Jackson held that "EPA made a nonacquiescence decision with respect to the Eighth Circuit's *Iowa League of Cities* opinion as of November 19, 2013" (*Id*., at 527), "[o]utside the Eighth Circuit, the EPA intended to follow its existing interpretation of its regulations, which the Eighth Circuit had struck down in *Iowa League of Cities*" (*Id*., at 535), and described the Desk Statement as a "general statement of policy as to how the EPA intends to proceed in light of the *Iowa League* decision" (*Id*. at 542-543).

6.     These FOIA's were submitted for the benefit of and on behalf of H&A's municipal clients who were and are still being informed that designing or operating a wastewater facility to blend peak flow constituted a violation of the federal bypass regulation.

7.      These documents contain the "working law" of the Agency and internal directives to EPA staff, the Regional Offices and delegated states governing NPDES program implementation, and H&A's Requests were submitted to unearth whether the Agency was acting lawfully by implementing secret law, therefore, there is a substantial public interest in the documents.

8.      The D.C. Circuit has repeatedly affirmed that "an agency is not permitted to develop 'a body of secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'"[1] As senior officials have announced and implemented the Agency's positions, based upon the documents requested, these are, in fact, the working law of the Agency and must be disclosed.

9.      As President Johnson said when he signed FOIA into law in 1966, "[t]his legislation springs from one of our most essential principles: a democracy works best when the people have all the information that the security of the nation will permit."[2] Congress enacted FOIA to promote transparency across the government. *See* 5 U.S.C. § 552; *Quick v. U.S. Dep't of Commerce, Nat'l Inst. of Standards & Tech.*, 775 F. Supp. 2d 174, 179 (D.D.C. 2011) (citing *Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984). The Supreme Court has explained that FOIA is "a means for citizens to know 'what their Government is up to.' This phrase should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-72 (2004).

---

[1] *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980)

[2] President Lyndon Johnson's Statement upon Signing the FOIA (Press Release, Office of the White House Press Secretary, "Statement by the President upon Signing S.1160", dated July 4, 1966, available at http://nsarchive.gwu.edu/NSAEBB/NSAEBB194/Document%2031.pdf).

10.     In general, with regard to the FOIA requests at issue here, EPA has failed to identify and produce records that support or otherwise explain its decision to limit the *Iowa League of Cities* decision to the Eighth Circuit and how that decision is to be implemented. Additionally, EPA has improperly withheld documents, or reasonably segregable portions thereof, that are responsive and required to be released under FOIA. Finally, EPA has charged excessive fees in responding to these requests.

11.     EPA's refusal to produce responsive records is also inconsistent with Executive Office Policy on FOIA compliance issued by Barack Obama on January 21, 2009. The Executive Memorandum states:

> The Freedom of Information Act should be administered with a clear presumption: In the face of doubt, openness prevails. The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears. All agencies should adopt a presumption in favor of disclosure, in order to renew their commitment to the principles embodied in FOIA, and to usher in a new era of open Government. The presumption of disclosure should be applied to all decisions involving FOIA.[3]

12.     EPA's refusal to respond is also inconsistent with the Clean Water Act Section 101(e) and 40 C.F.R. §123.1, which requires the public disclosure of information used as the basis for permit decisions and for national rule interpretations applied to permits.

**Jurisdiction**

13.     Plaintiff has exhausted administrative remedies with regard to each of the requests identified in paragraph 2.

_____
[3] Freedom of Information Act, 74 Fed. Reg. 4683 (Jan. 21, 2009).

14.     This Court has both subject matter jurisdiction over this action and personal

jurisdiction over the Defendant pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

**Venue**

15.     Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

**Parties**

16.     Plaintiff, H&A, is a Professional Limited Liability Company organized under

the laws of the District of Columbia. H&A's primary purpose is to serve as a regulatory

consultant and/or special counsel to municipal and private entities regarding environmental

matters. Specifically, the firm has addressed wastewater regulatory issues in every EPA Region,

over 40 states, and at EPA Headquarters in Washington, D.C.

17.     Defendant, EPA, is an agency of the federal government of the United States,

within the meaning of 5 U.S.C. § 552(e), and is located in Washington, D.C. EPA is in

possession and/or control of the records requested by H&A which are the subject of this action.

**Factual Allegations**

A.     *Background of FOIA Requests*

18.     On March 25, 2013, the Court of Appeals for the Eighth Circuit issued a decision

in *Iowa League of Cities v. EPA,* 711 F.3d 844 (8th Cir. 2013), vacating two unlawfully revised

legislative rules: (1) the mixing zone rule contained in a June 2011 EPA letter; and (2) the

blending rule (prohibition) contained in a September 2011 EPA letter. The Court held that the

bacteria mixing zone prohibition for primary contact recreation waters "eviscerate[d] state

discretion" to utilize such mixing zones (as allowed under 40 C.F.R. 122.44(d)) and, therefore,

constituted a revised rule that did not go through proper rulemaking procedures. *Id.* at 874.

19.     The Court of Appeals for the Eighth Circuit found EPA's blending prohibition was both procedurally and substantively improper as it was "irreconcilable with both the secondary treatment rule and the bypass rule" *(id.* at 875) and "exceeds EPA's statutory authority" under the Clean Water Act ("CWA"). *Id.* at 877.

20.     Following the *ILOC* decision, EPA petitioned the Eighth Circuit for rehearing *en banc,* which was denied July 10, 2013. EPA subsequently declined to seek Supreme Court review of the decision.

21.     Rather than appeal the decision, EPA determined that the decision would only apply within the Eighth Circuit.

22.     In April 2013, Jack Lipshultz of the Department of Justice (DOJ) advised the Office of General Counsel (OGC) that EPA may non-acquiesce to the Eighth Circuit decision.

23.     DOJ staff cautioned EPA against any formal, written expression of non-acquiescence to the *ILOC* decision because that could be subject to judicial challenge.

24.      In or around mid-August 2013 EPA decided to not appeal the *ILOC* decision to the Supreme Court, based, in part, on a determination that it could non-acquiesce to the decision, either formally or informally.

25.     On September 17, 2013, EPA drafted a document entitled "EPA's regulatory approach following the Eighth Circuit's *ILOC* decision."

26.      EPA and OGC met on or about October 29, 2013 to discuss, in part, the means by which EPA would non-acquiesce to the *ILOC* decision.

27.     The only options under consideration regarding the *ILOC* decision at the meeting with OGC involved non-acquiescence to that decision.

28.     In deciding to non-acquiesce in October 2013, EPA determined that it would continue to implement the regulatory interpretation with respect to blending, that was vacated by the Eighth Circuit.

29.     On or about October 29, 2013, staff from the Office of Water (OW) Water Permits Division circulated a "Moving Forward" document that listed activities to be undertaken to implement EPA's non-acquiescence decision.

30.     Following a meeting attended by OW and OGC staff, the items listed in the Moving Forward document began to be implemented by the Agency.

31.     On or about November 5, 2013, a memorandum entitled "Applicability of Iowa League decision to EPA permitting determinations" was created by EPA.

32.     The document entitled "Applicability of Iowa League decision to EPA permitting determinations" indicated that outside the Eighth Circuit EPA's rule interpretation that blending constitutes a bypass, subject to a No Feasible Alternatives (NFA) test, is the applicable rule interpretation.

33.     EPA Region 7 asked EPA HQ to send personnel to the November 13, 2013 4-States Meeting to explain how EPA would address the *ILOC* decision in future permit actions.

34.     EPA Offices of Water and/or General Counsel authorized Steve Neugeboren, Connie Bosma, and Kevin Weiss to attend the 4-States meeting in response to the request by EPA Region 7.

35.     EPA requires travel authorizations for EPA HQ staff to travel out of their locality for work related business, which explain the need for the authorized travel.

36.     EPA HQ staff that attended the 4-States meeting completed the required travel authorization forms.

37.     The travel authorization forms were approved for Mr. Neugeboren, Ms. Bosma, and Mr. Weiss.

38.     At least 17 EPA employees attended the 4-States meeting.

39.     At the 4-States meeting Steve Neugeboren (OGC) explained EPA's position on how the *ILOC* decision would be implemented in future permitting actions.

40.     Mr. Neugeboren indicated to those present that the *ILOC* decision would not apply in Kansas, because that state was outside of the Eighth Circuit.

41.     EPA staff informed those in attendance that EPA's rule interpretations vacated by the *ILOC* decision were still in enforceable outside the Eighth Circuit.

42.     On November 13, 2013, at the annual EPA Region VII 4-State Governmental Affairs Meeting, EPA Headquarters staff informed the regulated community, state permitting agencies, and EPA personnel of the Agency's intention to limit the *ILOC* ruling to the states within the Eighth Circuit.

43.     On or about November 17, 2013, EPA was contacted by a BNA Reporter to verify EPA's position announced at the 4-States meeting.

44.     On November 18, 2013, Nancy Stoner emailed staff from the OGC, OW and Office of Enforcement and Compliance Assurance ("OECA"), stating these offices had already agreed that the *ILOC* decision will only be binding in the Eighth Circuit.

45.     In response to the BNA inquiry, EPA staff from OGC, OW and OECA prepared a document labeled "Desk Statement" that detailed the agreed upon decision.

46.     The Assistant Administrators from the OW and OECA concurred on the wording of the Desk Statement.

47.     On November 19, 2013, EPA issued the Desk Statement describing how NPDES rules would apply inside vs. outside the Eighth Circuit in light of the *ILOC* decision.

48.     EPA released the Desk Statement to press, regional offices and delegated states.

49.     EPA's decision on how to implement the *ILOC* decision and blending in future permitting actions was stated in the Desk Statement.

50.     In *Hall and Associates v. EPA*, 315 F. Supp. 3d 519 (D.D.C. 2018), Judge Jackson found that the Desk Statement constituted a "general statement of policy as to how the EPA intends to proceed in light of the *Iowa League* decision" (*Id*. at 542-543).

51.     EPA did not appeal Judge Jackson's decision in *Hall and Associates v. EPA*, 315 F. Supp. 3d 519 (D.D.C. 2018).

52.     EPA is bound by Judge Jackson's ruling in *Hall and Associates v. EPA*, 315 F. Supp. 3d 519 (D.D.C. 2018) within the D.C. Circuit.

53.     Throughout the month of November 2013, EPA attorneys, Steven Neugeboren and James Vinch, were acting in concert with program office staff to draft documents detailing how the restriction on blending, vacated by the *ILOC* decision, could continue to be applied nationwide.

54.     On November 26, 2013, James Vinch and Joseph Theis confirmed via email OECA's understanding that it would continue to enforce blending as a bypass uniformly in all states outside the Eighth Circuit.

55.     OECA's understanding was that a "case by case" classification of blending as a bypass would not occur.

56.     The OW prepared a briefing sheet for a December 2013 meeting with the Deputy Administrator Robert Perciasepe to explain, in part, how the Agency would address the *ILOC* decision in future permitting.

57.     The briefing sheet prepared for Deputy Administrator Perciasepe was consistent with the Desk Statement.

58.     The Deputy Administrator was informed that the *ILOC* decision was improperly decided.

59.     The Deputy Administrator was informed that EPA would not follow the *ILOC* decision outside of the Eighth Circuit.

60.     The Deputy Administrator was informed that EPA would continue to implement its conclusion that blending constitutes a bypass subject to a no feasible alternatives analysis outside of the Eighth Circuit.

61.     Following the issuance of the Desk Statement, EPA did not withdraw any prior permit objections, enforcement orders or informal comments to delegated state agencies stating that blending should be classified and/or regulated as a bypass.

62.     In 2013 through 2015 when New Jersey was developing and issuing NJPDES permits for CSO-related discharges, EPA informed New Jersey DEP that processing greater peak CSO-related flows at wastewater facilities by blending must be classified and or regulated as a bypass.

63.     In 2013, EPA participated in an ongoing Clean Water enforcement action against the Passaic Valley Sewerage Commission ("PVSC").

64.     This PVSC enforcement action did not involve a violation due to blending.

65.     PVSC informed EPA that it planned on utilizing blending to process greater CSO-related flows at its wastewater plant.

66.     EPA issued an administrative order to PVSC in April 2018, which would classify and or regulate any future blending operations to process greater CSO-related flows at PVSC as a bypass subject to a no feasible alternatives analysis.

67.     At the NPDES Program Improvements for the 21st Century Strategy and Priority Meeting in EPA Region 5 on December 9-12, 2013, EPA held a presentation in which Connie Bosma, Chief of the HQ Municipal Branch, discussed the *Iowa League of Cities* decision and the Agency's position on how that decision will implement permitting and enforcement outside of the Eighth Circuit.

68.     Ms. Bosma informed those in attendance that blending should still be classified as a bypass outside of the Eighth Circuit.

69.     At the National Municipal Enforcement Conference in Region 5 on October 29 and 30, 2014, EPA held a presentation on the *Iowa League of Cities* decision with the objective of discussing its impact on enforcement against bypasses at POTWs and EPA's plans to address permitting and enforcement issues related to that decision.

70.     At this meeting the presenters, who included Jim Vinch, Kevin Weiss and Patricia Miller, informed those in attendance that blending will be considered a bypass in all future permitting and enforcement outside the Eighth Circuit.

71.     EPA continues to assert outside the Eighth Circuit that blending, where it occurs, is subject to and constitutes a violation of the federal bypass regulation.

72.     In October 2018, EPA released approximately 30 pages of records to H&A in *Hall & Associates v. EPA*, Civil Action No. 18-1749 (D.D.C.) that the Agency previously asserted were predecisional and deliberative.

73.      The 30 released pages of records in *Hall & Associates v. EPA*, Civil Action No. 18-1749 (D.D.C.) concern the November 19, 2013 Desk Statement and EPA's position on how enforcement and permitting will be implemented after the *ILOC* decision.

 B.     *Nov. 20, 2013 NJ Blending Clarification Request*

74.     On October 25, 2013, H&A submitted a FOIA request to EPA Headquarters for communications discussing the impact of the *Iowa League of Cities* decision on permitting and enforcement (EPA-HQ-2014-000552). Exhibit 5

75.     In response to the 2013 *ILOC* Implementation request, EPA provided, among other records, the partially-redacted November 20, 2013 EPA email withheld under the deliberative process privilege on December 24, 2013. Exhibit 6 – EPA Response to 2013 *ILOC* Implementation Request.

76.     The basis of EPA's deliberative process privilege was the claim that EPA had yet to render a decision on how it would implement *ILOC* outside the Eighth Circuit.

77.     On May 22, 2018, the D.C. District Court held that "EPA made a nonacquiescence decision with respect to the Eighth Circuit's *Iowa League of Cities* opinion as of November 19, 2013." *Hall & Associates v. EPA*, 315 F. Supp. 3d 519, 527 (D.D.C. 2018), thus EPA's deliberative process privilege with regard to the redacted email would be considered invalid.

78.     On August 7, 2018, H&A submitted the Nov. 20, 2013 NJ Blending Clarification Request to EPA Headquarters seeking "the attached [November 20, 2013] email in full" in light of the D.C. District Court's ruling. Exhibit 1.

79.     The November 20, 2013 email postdates the Agency's nonacquiescence decision rendered, at the latest, on November 19, 2013 and therefore, H&A indicated that the requested document may not be classified as pre-decisional or deliberative and must be released.

80.     On September 20, 2018, EPA denied the Nov. 20, 2013 NJ Blending Clarification Request in full, refusing to release the sought document. The denial claimed the record was exempt from disclosure because it is pre-decisional and deliberative, attorney client privileged and attorney work-product privileged. Exhibit 7 – EPA Response to Nov. 20, 2013 NJ Blending Clarification Request.

81.     EPA requested $140, five hours of review time to determine whether the single paragraph was exempt from disclosure.

82.     On October 24, 2018, H&A timely appealed the decision denying the Nov. 20, 2013 NJ Blending Clarification Request appealing the improper withholding of the responsive record and EPA's unreasonable payment request. Exhibit 8 – Nov. 20, 2013 NJ Blending Clarification Request Appeal.

83.     On November 30, 2018, EPA provided the final appeal determination denying the request in full. EPA dropped the deliberative process privilege and attorney client privilege claims and withheld the responsive document solely under attorney work-product privilege. EPA claimed the withheld portion of the email was prepared in anticipation of litigation related to an ongoing Clean Water Act enforcement action against PVSC. Exhibit 9 – EPA Appeal Determination to Nov. 20, 2013 NJ Blending Clarification Request.

84.     The November 20, 2013 email requests EPA's position on how the Agency will be handling the *Iowa League of Cities* decision. This email is discussing the Agency's agreed upon decision regarding the interpretation of EPA regulations on blending.

85.     The ongoing enforcement action against PVSC was not related to a violation due to blending and EPA did not have any pending litigation against PVSC regarding blending.

86.     Interpretations and summaries of Agency regulations or positions are not protected by the attorney work-product privilege.

87.     EPA's rationale for continuing to withhold the redacted portion of the request record is baseless.

C.      *2018 Blending Rulemaking Request*

88.     On August 28, 2018, H&A submitted a FOIA Request to EPA Headquarters for (1) documents prepared as part of the process of getting authorization to proceed with the proposed peak flows management rulemaking; (2) notices to OMB and background documents that describe the basis and background for the proposed rulemaking; (3) documents that describe the form or nature of the proposed action; and (4) documents prepared as part of or in conjunction with the proposed action that identify or discuss the rule being considered for modification. Exhibit 2.

89.     On October 19, 2018, EPA provided an interim release to H&A including five nearly identical, partially-redacted power point presentations entitled *Bypass and Blending: Wet Weather Impacts at Treatment Plants*. Exhibit 10 – EPA Interim Response to 2018 Blending Rulemaking Request.

90.     The redactions were claims to be withheld only under deliberative process privilege.

14

91.     EPA also provided a list of nine fully withheld documents all claimed to be exempt by the deliberative process privilege with boilerplate language stating, "the internal document was pre-decisional and deliberative."

92.     H&A timely appealed the 2018 Blending Rulemaking Request on November 1, 2018, challenging EPA's failure to properly process H&A's FOIA request by withholding portions of and entire responsive records under an improper claim of deliberative process privilege, inadequate search for records responsive to this request and the excessively assessed fees. Exhibit 11 – 2018 Blending Rulemaking Request Appeal.

93.     The redacted portions of the responsive power point presentations discuss the Agency's regulations and case law regarding blending.

94.     EPA did not release segregable portions of the nine documents completely withheld or provide sufficient descriptions of the documents to provide justification for withholding.

95.     EPA may not withhold as predecisional documents filed with OMB to seek authorization to proceed with rulemaking.

96.     One purpose of the rulemaking effort was to admit a modification to the bypass rule to allow blending outside of the Eighth Circuit.

97.     After repeated requests, EPA has yet to provide a final appeal determination for this request.

D.     *Blending Enforcement Orders Request*

98.     On June 14, 2018, H&A submitted a FOIA Request to EPA Headquarters seeking records concerning: "(1) any type of enforcement order or action where EPA was a party, within the past 3 years, that would or did classify blending as a bypass; (2) any type of enforcement

order or action where EPA was a party, within the past 3 years, that indicated blending may be implemented as an interim measure; and (3) any and all documents, located at EPA Headquarters and EPA Region 2, associated with the attached Passaic Valley Sewerage Commission Administrative Order, including any draft versions of the attached order." Exhibit 3.

99.     The PVSC Administrative Order, issued by EPA, contained a provision that classifies blending as a bypass.

100.     Over approximately three months, H&A and EPA discussed several clarifications and payment assurances. Exhibit 12 – Blending Enforcement Orders Request Email Correspondence.

101.     In an email on August 15, 2018, H&A was informed that EPA "found no responsive documents for items #1 and #2 of the request" (*i.e.*, enforcement orders classifying blending as a bypass). *Id.* at 4.

102.     On August 29, 2018, H&A provided EPA with a clarification letter specifically requesting that the response to the request "only provide copies of PVSC-related records that discuss how or whether blending would be regulated as a bypass" as well as any enforcement orders classifying blending as a bypass. Exhibit 13 – Blending Enforcement Orders Request Clarification Letter.

103.     On September 20, 2018, EPA provided four compilations consisting of over a thousand pages of responsive records and claiming to include an attached index of withholdings. Exhibit 14 – EPA Response to Blending Enforcement Orders Request.

104.     Even after repeated requests, EPA has not provided H&A with an index of the documents being fully withheld or the justification for those withholdings.

105.     The Agency requested $1,064 to process this request.

106.    On December 18, 2018, H&A timely appealed the Blending Enforcement Orders Request appealing the Agency's (1) withholding of entire responsive documents improperly under a claim of deliberative process privilege; (2) failure to provide an index of the withheld records and the justification for the withholdings; (3) inadequate and incomplete search and (4) excessively assessed fees without providing the index of withholdings. Exhibit 15 – Blending Enforcement Orders Request Appeal.

107.    The final appeal determination was due January 18, 2018 and EPA has failed to respond to H&A's appeal of this request.

E.    *4-States Meeting Blending Announcement Request*

108.    On May 31, 2018, H&A submitted a FOIA Request to EPA Headquarters seeking all records and correspondence concerning the November 2013 4-States Meeting between EPA HQ and EPA Region 7 from January 1, 2013 to the present and any travel authorizations or records addressing EPA HQ personnel attendance at that meeting. Exhibit 4.

109.    On September 21, 2018, EPA responded to the 4-States Meeting Blending Announcement Request providing 18 records in full and withholding 6 records in part. Exhibit 16 – EPA Response to 4-States Meeting Blending Announcement Request.

110.    H&A contacted EPA indicating that the search was clearly inadequate as travel authorizations were specifically requested and none were provided. Exhibit 17 – H&A Email on 4-States Meeting Blending Announcement Request.

111.    H&A appealed that determination on December 19, 2018 challenging the sufficiency of the search for responsive records for this request. Exhibit 18 – 4-States Meeting Blending Announcement Request Appeal.

112.    EPA has yet to provide an appeal determination to this request.

**Count I: Violation of the Freedom of Information Act – Nov. 20, 2013 NJ Blending Clarification Request**

113.    Paragraphs 1 through 112 are incorporated by reference.

114.    EPA has clearly rendered a final decision regarding the national applicability of the *ILOC* decision, as repeatedly announced by top officials from EPA Office of Water and Enforcement and as determined by this Court in *Hall & Associates v. EPA*, Civil Action No. 15-cv-01055 (D.D.C.).

115.    H&A's Nov. 20, 2013 NJ Blending Clarification Request sought a paragraph from a document that specifically requested and discussed the Agency's position on enforcement and permitting after the *Iowa League of Cities* decision. An Agency's regulatory interpretations and "working law" are not exempt from disclosure under FOIA.

116.    The November 20, 2013 email requested EPA's rendered position on how the Agency's is "handling the 8th Circuit's *Iowa League of Cities* decision," to share with the State of New Jersey.

117.    The November 20, 2013 email was not created in anticipation of litigation related to the PVSC enforcement action, as that action was not regarding a violation of blending. There was no ongoing litigation regarding PVSC and blending at that time. Therefore, the discussion within the email on PVSC and blending could not be considered attorney work-product.

118.    The interpretation and summary of Agency regulations or positions are not protected by attorney work-product.

119.    EPA's request of $140 – five hours of review time, to review a single paragraph is unreasonable.

120.    EPA's use of the attorney work-product privilege was improper under FOIA. *See* 5 U.S.C. §552(b)(5).

121.     EPA's excessive fee assessments do not reflect a reasonable level of time and effort in violation of FOIA. *See* 5 U.S.C. §552(a)(4)(A)(ii)(I).

**Count II: Violation of the Freedom of Information Act – 2018 Blending Rulemaking Request**

122.     Paragraphs 1 through 112 are incorporated by reference.

123.     EPA has clearly rendered a final decision regarding whether blending should be classified as a bypass outside the Eighth Circuit, as repeatedly announced by top officials from EPA Office of Water and Enforcement and as determined by this Court in *Hall & Associates v. EPA*, Civil Action No. 15-cv-01055 (D.D.C.).

124.     The withheld portions of the responsive records detail the existing regulations and case law pertaining to blending.

125.     The 2018 Blending Rulemaking Request sought the basis and background documents concerning the Agency's proposed rulemaking on blending. The regulated community has the right to know the Agency's working law and the bases for such regulatory decisions. These documents should be released for the public the review.

126.     OMB authorizations are final actions and therefore not deliberative.

127.     EPA's use of the deliberative process privilege was improper under FOIA. *See* 5 U.S.C. §552(b)(5).

128.     EPA's refusal to release reasonably segregable portions of the withheld documents is in violation of FOIA. *See* 5 U.S.C. §552(a)(8)(A)(ii)(II).

**Count III: Violation of the Freedom of Information Act – Blending Enforcement Orders Request**

129.     Paragraphs 1 through 112 are incorporated by reference.

130.    The Blending Enforcement Orders Request sought records detailing EPA's rendered decision regarding blending and the implementation of that decision. The public has the right to know the Agency's working law and the implementation thereof affecting the regulated community.

131.    EPA's refusal to provide an index detailing the withheld documents and the justification for the withholding is improper under FOIA. *See* 5 U.S.C. §552 (a)(2)(E).

132.    EPA's failure to conduct a full and proper search for records responsive to the request is in violation of FOIA. *See* 5 U.S.C. §552(a)(3).

133.     EPA's excessive fee assessments do not reflect a reasonable level of time and effort in violation of FOIA. *See* 5 U.S.C. §552(a)(4)(A)(ii)(I).

**Count IV: Violation of the Freedom of Information Act – 4-States Meeting Blending Announcement Request**

134.    Paragraphs 1 through 112 are incorporated by reference.

135.    The records requested concern the Agency's agreement on how the *Iowa League of Cities* decision will be handled outside of the Eighth Circuit and the announcement of that decision at the 4-States meeting.

136.    H&A specifically requested the travel authorization documents for EPA HQ personnel regarding the 4-States Meeting and EPA did not provide those records in response to this request.

137.    EPA's failure to conduct a full and proper search of responsive records to the request is in violation of FOIA. *See* 5 U.S.C. §552(a)(3).

**Relief Requested**

WHEREFORE, Plaintiff, H&A, prays that this Court:

1.   Maintain jurisdiction over this action until EPA is in compliance with FOIA, and every order of this Court;

2.   Order EPA to respond to each of H&A's requests fully and completely;

3.   Find EPA in violation for refusing to release the responsive documents, or portions thereof, in the Agency's possession;

4.   Enjoin EPA from excessive exertion of deliberative process privilege, attorney-client privilege and/or attorney work-product privilege on the withheld documents and order EPA to release the withheld documents as not properly exempt under FOIA;

5.   Order EPA to produce detailed indices of withheld documents including the justification for withholding;

6.   Order EPA to reimburse H&A for any FOIA payments made regarding EPA's processing of these related requests;

7.   Enjoin EPA from charging H&A unreasonable fees given the work performed;

8.   Award reasonable costs and attorney's fees to H&A provided in 5 U.S.C. §552(a)(4)(E) and/or 28 U.S.C. §2412(d); and

9.   Grant any other relief as the Court may deem just and proper.


Respectfully submitted,

//s// John C. Hall
John C. Hall, Esq.
D.D.C. Bar #398172
Hall & Associates
1620 I Street, N.W., Suite 701
Washington, D.C. 20006
Email: jhall@hall-associates.com
Phone: 202.463.1166
Fax: 202.463.4207